**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3655

_____

RAHEEL AHMAD KHAN,
individually and on behalf of others similarly situated

v.

DELL INC.,

Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:09-cv-03703)
District Judge:  Honorable Joel A. Pisano

_____

Argued on April 28, 2011

Before:  SLOVITER, GREENAWAY, JR and ROTH, <u>Circuit
Judges</u>

(Opinion filed  January 20, 2012)

Kristine M. Brown, Esquire **(Argued)**
Derin B. Dickerson, Esquire
Alston & Bird, LLP
1201 W. Peachtree Street
One Atlantic Center
Atlanta, Georgia 30309

Craig Carpenito, Esquire
Alston & Bird, LLP
90 Park Avenue
New York, NY   10016-1387

        Counsel for Appellant


F. Paul Bland, Jr., Esquire **(Argued)**
Public Justice
1825 K Street, N.W., Suite 200
Washington, D.C. 20006

Elizabeth Berney, Esquire
Eduard Korsinsky, Esquire
Shannon Hopkins, Esquire
Levi & Korsinsky, LLP
30 Broad Street, 15th Floor
New York, NY  10004

Michael Korsinsky, Esquire
Law Office of Michael Korsinsky
30 Broad Street, 15th Floor
New York, NY  10004

        Counsel for Appellees

———————

O P I N I O N

———————

**ROTH**, <u>Circuit Judge</u>:

This appeal involves a matter of first impression for this Circuit – whether Section 5 of the Federal Arbitration Act (FAA) requires the appointment of a substitute arbitrator when the arbitrator designated by the parties is unavailable. Dell, Inc., appeals from the District of New Jersey's denial of Dell's Motion to Compel Arbitration and Stay Plaintiff's Claims. Dell contends that the District Court erred in denying its motion to compel arbitration based on the District Court's belief that the arbitration provision was rendered unenforceable because it provided for the parties to arbitrate exclusively before a forum that was unavailable when Khan commenced suit. The District Court also refused to appoint a substitute arbitrator, finding that it could not compel the parties to submit to an arbitral forum to which they had not agreed.

## I. FACTUAL BACKGROUND

Dell designed, manufactured, and distributed the 600m computer from 2003 to 2006. Khan purchased a Dell 600m computer in September 2004 for approximately $1,200. Khan purchased the computer online through Dell's website, www.Dell.com. To complete the purchase, Khan was required to click a box stating "I AGREE to Dell's Terms and Conditions of Sale." Just beneath the box was a notice stating:

3

The Terms and Conditions of Sale contain very important information about your rights and obligations as well as limitations and exclusions that apply to you. They contain limitations of liability and warranty information. They also contain an agreement to resolve disputes through arbitration, rather than through litigation. Please read them carefully.

As Dell's notice indicated, its Terms and Conditions of Sale contained an arbitration provision that reads as follows:

**13. Binding Arbitration.** ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL, its agents, employees, principals, successors, assigns, affiliates (collectively for purposes of this paragraph, "Dell") arising from or relating to

4

this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at http://www.arb-forum.com, or via telephone at 1-800-474-2371). The arbitration will be limited solely to the dispute or controversy between customer and Dell. NEITHER CUSTOMER NOR DELL SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER CUSTOMERS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR CLASS ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. This transaction

involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrators shall be final and binding on each of the parties . . . . Information may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55405.

Rule 1 of the NAF's "Code and Procedure," referred to in paragraph 13 above, provided that "[t]his Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." Also, as we can see in paragraph 13, the arbitration provision did not designate a replacement forum in the event that NAF was unavailable for any reason. But, as we see, the Terms and Conditions did incorporate the Federal Arbitration Act.

In addition, the Terms and Conditions provided that Texas law would govern interpretation of the Agreement and of any sales. The Terms and Conditions did not contain a severance provision and any alterations to the Terms and Conditions required the signature of both parties.

Khan alleged that his 600m suffered from design defects, causing his computer to overheat and thereby destroy the computer's motherboard. Khan replaced the motherboard multiple times. After the third replacement, Dell refused to issue another replacement, claiming the warranty had expired. The 600m allegedly suffered from other design defects, which

prevented it from being used in a manner consistent with Dell's marketing.

On July 24, 2009, Khan filed a putative consumer class action on behalf of himself and other similarly situated purchasers and lessees of defectively designed 600m computers sold from approximately 2003 through 2006. Khan asserted seven claims for (1) violations of the New Jersey Consumer Fraud Act, (2) breach of express warranty, (3) breach of implied warranty of merchantability or fitness for particular purpose, (4) fraud, (5) negligent misrepresentation, (6) breach of implied covenant of good faith and fair dealing, and (7) unjust enrichment. At the time the lawsuit was filed, the NAF had been barred from conducting consumer arbitrations by Consent Judgment, which resolved litigation brought by the Attorney General of Minnesota.[1] The Consent Judgment "barred [the NAF] from the business of arbitrating credit card and other consumer disputes and [ordered the NAF to] stop accepting any new consumer arbitrations or in any manner participate in the processing or administering of new consumer arbitrations." This was the result of government investigations revealing that the NAF engaged in various deceptive practices that

---

[1] *See generally* "'*Arbitration' or 'Arbitrary': The Misuse of Mandatory Arbitration to Collect Consumer Debts*" Before the Subcomm. on Domestic Policy, Oversight and Government Reform Comm. 3-5 (2009) (statement of Minnesota Attorney General Lori Swanson), http://oversight.house.gov/images/stories/Hearings/pdfs/2009 0722Swanson.pdf (recounting Minnesota Attorney General's findings).

disadvantaged consumers.

According to Khan, such practices included:

(1) representing to consumers and the public that it was neutral;

(2) convincing credit card companies and other creditors to include exclusive arbitration forum provisions in their contracts and making representations to such entities that it would favor the entities in the arbitrations; and

(3) identifying and appointing anti-consumer arbitrators and withholding referrals to arbitrators who decided cases against companies.

Khan also alleged that the Minnesota investigations found that these practices encouraged some corporations to select the NAF as their arbitration forum because of this prospect of favorable results. However, although Khan suggested that Dell must have chosen the NAF based on its corporate-friendly disposition, the record does not show that Dell was aware of these practices at the time that it selected the NAF as the arbitral forum governing Khan's purchase or that Dell selected the NAF for any improper reason.

8

On October 2, 2009, Dell moved to compel arbitration, arguing that the arbitration provision was binding and covered all of Khan's claims. Khan did not dispute that the Terms and Conditions governed the contract. Khan did, however, assert that the arbitration provision was unenforceable because the NAF, which the arbitration provision designated as the arbitral forum, was no longer permitted to conduct consumer arbitrations. Khan further contended that the NAF's designation was integral to the arbitration provision. He argued, for that reason, that, because the NAF could not perform its function, the arbitration provision in the Terms and Conditions should not be enforced and the parties should proceed to litigation.

On August 18, 2010, the District Court denied Dell's motion to compel arbitration and stay claims. *See Khan v. Dell, Inc.*, No. 09-3703 (JAP), 2010 WL 3283529 (D.N.J. August 18, 2010). After surveying the relevant case law, and acknowledging that "the Third Circuit has not spoken on the issue," *id.* at \*3, the District Court found that the clause in the Terms and Conditions – "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION AND ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect" – demonstrated "the parties' intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate generally." *Id.* at \*4. The District Court noted that "[s]ome courts have held that § 5 [of] the Federal Arbitration Act ("FAA") provides a mechanism for the appointment of an arbitrator when a chosen arbitrator is unavailable", *id.* at \*2, but that the designation here of the NAF as the arbitrator was "integral" to the arbitration clause. *Id.* (citing *Carideo v. Dell, Inc.*, No.

9

C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009), and *Ranzy v. Extra Cash of Texas, Inc.*, No. H-09-3334, 2010 WL 936471 (S.D. Tex. March 11, 2010)). The court concluded that granting Dell's motion to compel and appointing a substitute arbitrator would improperly force the parties to "submit to an arbitration proceeding to which they have not agreed." *Id.* at 4.

## II. JURISDICTION AND STANDARD OF REVIEW

A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 & n.9 (3d Cir. 1980). "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (internal quotations omitted). We exercise plenary review of questions concerning the "validity and enforceability of an agreement to arbitrate." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 357 (3d Cir. 2007). Although we subject underlying factual matters to the clearly erroneous standard, *id.*, the "legal question whether the [appellee] may be compelled to arbitrate [his] claims" is reviewed under the plenary standard. *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1113 (3d Cir. 1993).

## III. ANALYSIS

In this appeal, we must determine whether the provision in the Terms and Conditions that the NAF be the arbitrator is exclusive to the NAF and is an integral part of the agreement between Dell and Khan, thus preventing the

appointment of a substitute arbitrator. Because this is a question of arbitrability, it is governed by the FAA. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 180 (3d Cir. 2010). Congress passed the FAA "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, __ U.S. __, __, 131 S. Ct. 1740, 1745 (2011). The FAA reflects a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Supreme Court has unequivocally stated "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id*. However, the FAA respects the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, __, 130 S. Ct. 2772, 2776 (2010), and that "arbitration 'is a matter of consent, not coercion,'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, __ U.S. __, __, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

The particular problem presented in this case – the unavailability of the NAF – is addressed in section 5 of the FAA, which provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable.[2] *See*

---

[2] Section 5 provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator, or arbitrators or umpire, or in filling a vacancy, then upon the

11

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("Where the chosen forum is unavailable . . . or has failed for some reason, § 5 applies and a substitute arbitrator may be named."). In determining the applicability of Section 5 of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was "integral" to the arbitration provision or was merely an ancillary consideration. *See, e.g.*, *Reddam v. KPMG LLP*, 457 F.3d 1054, 1061 (9th Cir. 2006), *abrogated on other grounds by Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.,* 621 F.3d 931 (9th Cir. 2010); *Brown*, 211 F.3d at 1222. As the Eleventh Circuit has articulated the standard: "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern,' will the failure of the chosen forum preclude arbitration." *Id*. In other words, a court will decline to appoint a substitute arbitrator, as provided in the FAA, only if the parties' choice of forum is "so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end." *Reddam*, 457 F.3d at 1061. In this light, the parties must have unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable.

---

application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

According to Khan, this standard has been met because the Terms and Conditions designate the NAF as the exclusive arbitral forum, implying that disputes should not be arbitrated if the NAF is unavailable. Khan relies on the contract language that states that all disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM."

In our view, this language is ambiguous: "EXCLUSIVELY" could be read to modify "BINDING ARBITRATION," "THE NATIONAL ARBITRATION FORUM," or both.

Khan, however, points out that the NAF's rules are incorporated into the contract, and that these rules provide that all arbitrations must be conducted by the NAF or an entity having an agreement with it. We conclude, however, that this requirement is also ambiguous as to what should happen in the event that the NAF is unavailable. The NAF's rules provide that they shall be interpreted in a manner consistent with the FAA and that, if any portion of the NAF rules are found to be unenforceable, that portion shall be severed and the remainder of the rules shall continue to apply.

Our finding of ambiguity is confirmed by the conflicting interpretations of this language adopted by the courts that have considered it.

The court in *Brown* supports Dell's position that "exclusively" modifies "binding arbitration." The arbitration agreement in *Brown* was interpreted as demonstrating an intent to arbitrate that trumped the designation of a particular

13

arbitrator who was no longer available. In *Brown*, a former ITT employee argued that the arbitration clause between the parties – which was virtually identical to the clause here – was void because the NAF had been dissolved. *Id.* at 1220, 1222. The Eleventh Circuit found that the unavailability of the NAF did not destroy the arbitration clause because Section 5 of the FAA provided a mechanism for appointing a replacement arbitrator. *Id.* at 1222. The court did note the "integral" exception but found that there was no evidence supporting the employee's claim that the forum provision was integral to the arbitration clause. *Id.*

*Adler v. Dell, Inc.*, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009), also supports Dell's position. The facts and arguments proffered in *Adler* are identical to those before us. After noting the "integral" exception, the *Adler* court articulated the presumption in favor of enforceability of Section 5 of the FAA as follows: "when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act." *Id.* at *2. In addition, the *Adler* court found the clause "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINSTERED BY THE NATIONAL ARBITRATION FORUM" was ambiguous on the issue of whether the NAF's exclusive designation was integral to the provision or whether the intent to arbitrate superseded the NAF's designation. *Id.* The court concluded that the arbitration provision did not meet the standard that an arbitration provision will fail only when the designation of an arbitrator is "as important a consideration as the agreement itself." *Id.* at *3.

14

On the other hand, in *Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009), a case factually similar to this one, the plaintiff who had bought an allegedly defective Dell computer, brought suit against Dell. Dell moved to compel arbitration, pursuant to the arbitration provision that designated the NAF as the arbitral forum. Applying the Ninth Circuit's decision in *Reddam*, the court in *Carideo* held that the parties' selection of the NAF was integral to the arbitration agreement. *Carideo*, 2009 WL 3485933 at *4. Because the court found that the selection of the NAF and of its rules was integral to the arbitration provision, it concluded that appointing a substitute arbitrator would be a wholesale revision of the arbitration agreement. *Id.* at *6. In coming to its conclusion, however, the court stated that "[i]n general, the FAA provides that where the chosen arbitrator is unavailable, the court *may* appoint a substitute arbitrator." *Id.* at *3 (emphasis added). We do not agree with the language used by the *Carideo* court. We note that Section 5 provides that in the case of an unavailable arbitrator, "upon the application of either party to the controversy the court *shall* designate and appoint an arbitrator." 9 U.S.C. § 5 (emphasis added). The difference between *may* and *shall* significant. We do not find *Carideo* persuasive.

Although courts are divided on the issue, we conclude that the "liberal federal policy in favor of arbitration" counsels us to favor the *Brown* line of cases. The language relied on by Khan is at best ambiguous as to whether the parties intended to have their disputes arbitrated in the event that NAF was unavailable for any reason. Because of the ambiguity, it is not clear whether the designation of NAF is ancillary or is as important a consideration as the agreement

15

to arbitrate itself. *See Brown*, 211 F.3d at 1222. Therefore, we must resolve this ambiguity *in favor* of arbitration. *See Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 186 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp. Al. v. Randolph*, 531 U.S. 79 (2000).

We note moreover that the arbitration provision in the Terms and Conditions specifically incorporated the FAA, 9 U.S.C. §§ 1-16, suggesting that, in the event of the NAF's unavailability, the FAA's procedures for addressing such a problem should apply. Finally, we note the notice, provided to Khan when he accepted the Terms and Conditions, which stated that they "contain an agreement to resolve disputes through arbitration, rather than through litigation."

Khan, however, argues that, even if the NAF's designation as the arbitral forum was not integral to the Terms and Conditions, Section 5 of the FAA nevertheless did not apply here because NAF's unavailability was not a "lapse" within the meaning of statute. In support of this argument, Kahn cites *In re Salomon Inc. S'holders' Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995), a case in which the arbitral forum, the NYSE, had refused to arbitrate. Khan argues that the word "lapse" in Section 5 of the FAA means "a lapse in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators or some other mechanical breakdown in the arbitrator selection process," not the NYSE's refusal to arbitrate the dispute – or the NAF's unavailability to do so.

We find *In re Salomon* unpersuasive. First, we do not see why the NAF's unavailability is not a "mechanical breakdown in the arbitrator selection process." Apparently,

the NAF's Consent Judgment with the State of Minnesota prevents it from acting as an arbitrator. This unavailability appears to us to be a breakdown in the mechanics of the appointment process. To take a narrower construction of Section 5 would be inconsistent with the "liberal federal policy in favor of arbitration" articulated in the FAA.

We conclude therefore that the unavailability of NAF to hear the disputes between Khan and Dell constitutes a "lapse" within the meaning of Section 5.[3]

## IV. CONCLUSION

The contract's language does not indicate the parties' unambiguous intent not to arbitrate their disputes if NAF is unavailable. Section 5 of the FAA requires a court to address such unavailability by appointing a substitute arbitrator. The District Court's contrary conclusion is at odds with the fundamental presumption in favor of arbitration. We will therefore vacate the judgment of the District Court and remand this case for further proceedings consistent with this opinion.

---

[3] Because the District Court denied Dell's motion to compel arbitration, it did not address Khan's alternative argument that the arbitration provision in the contract is unconscionable. We leave it to the District Court to address this argument on remand.

*Raheel Ahmad Khan v. Dell, Inc.*, No. 10-3655

SLOVITER, *Circuit Judge*, dissenting.

The majority opinion acknowledges that the Supreme Court has stated the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, ____ U.S. ____, 130 S. Ct. 2772, 2776 (2010).  Indeed it has so stated more than once.  I dissent because the majority has given mere lip service to this "fundamental principle," and its holding as applied in this particular case violates that principle.  There is no ambiguity in the arbitration agreement.

The plain text of the arbitration agreement clearly states that the selection by Dell of the NAF as arbitrator was integral to the agreement, and leads me to conclude that Section 5 of the FAA is inapplicable and the unavailability of the NAF precludes arbitration.

The arbitration clause in Dell's Terms and Conditions of Sale states:

> **13. Binding Arbitration.**  ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL, its agents, employees, principals, successors, assigns, affiliates, (collectively for purposes of this paragraph, "Dell") arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which resulted from this Agreement (including, to the full extent permitted by applicable law, relationship with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under

1

its Code of Procedure then in effect (available via the Internet at http://www.arb-forum.com, or via telephone at 1-800-474-2371). The arbitration shall be limited solely to the dispute or controversy between customer and Dell. NEITHER CUSTOMER NOR DELL SHALL CONSOLIDATE CLAIMS BY OR AGAINST OTHER CUSTOMERS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR CLASS ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. This transaction involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act, 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator shall be final and binding on both of the parties . . . . Information may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55404.

App. at A67.

The majority reasons that this language is "ambiguous" because "'EXCLUSIVELY' could be read to modify 'BINDING ARBITRATION,' 'THE NATIONAL ARBITRATION FORUM,' or both," s*ee* Majority Opinion *supra* page 13, and that the "liberal federal policy in favor of arbitration" thus compels the court to resolve this "ambiguity" in favor of arbitration. *See* Majority Opinion *supra* page 15. However, "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). The majority's conclusion focuses solely on the language used rather than giving appropriate weight to the additional clues that demonstrate the parties' clear intent.

The phrase "EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTRATED BY THE NATIONAL ARBITRATION FORUM" is written in all capital letters yet surrounded by clauses written in lower case letters. This aesthetic prominence indicates the parties' intent for the entire phrase to be read together and emphasized as an essential part of the agreement. Moreover, as noted by the District Court, "[t]he NAF is expressly named, the NAF's

2

rules are to apply, . . . no provision is made for an alternate arbitrator [, and the] language used is mandatory, not permissive." App. at A12. The agreement also states that "[i]nformation may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55404," again illustrating the central role that NAF was intended to play in arbitrations pursuant to this agreement.

Given "the consensual nature of private dispute resolution," courts must respect the principle that "parties are generally free to structure their arbitration agreements as they see fit." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) (internal quotation marks and citation omitted). Here, the parties agreed only to binding arbitration administered by the NAF. Full analysis of the plain text of the agreement as a whole shows that the selection of the NAF as arbitrator was an integral part of the agreement to arbitrate. Therefore, Section 5 of the FAA is inapplicable and the unavailability of the NAF precludes arbitration. I respectfully dissent.

There is yet another reason why Dell's request to proceed via arbitration rather than trial should not be granted, and that reason applies to <u>this defendant</u> in <u>this</u> case. The majority avoids any discussion of the underlying reason why arbitration by NAF is unavailable. In an action pending in Minnesota, the Minnesota Attorney General made public the results of its year-long investigation that showed that NAF, far from being the neutral arbitration forum contemplated by Congress when it enacted the Federal Arbitration Act, represented to corporations that it would appoint anti-consumer arbitrators and discontinue referrals to arbitrators who decided cases in favor of consumers. *See* Amicus Curiae Br. at 8, 13-15; *see also Arbitration or "Arbitrary": The Misuse of Mandatory Arbitration to Collect Consumer Debts: Hearing Before the H. Domestic Policy Subcomm. of Comm. on Oversight and Gov't Reform*, 111th Cong. (July 22, 2009).

Rather than disputing the allegations, NAF accepted a consent judgment that barred it from administering and participating in all consumer arbitrations. *See id.* (testimony of Lori Swanson, Minnesota Attorney General, at 3) ("Under the Consent Judgment, [NAF] is barred from the business of

3

arbitrating credit card and other consumer disputes and must stop accepting any new consumer arbitrations or in any manner participate [sic] in the processing or administering of new consumer arbitrations."); *see also* App. at A273-76. It cannot be insignificant that Dell named NAF as the exclusive forum in its arbitration clauses. It followed that the District Court refused Dell's request to designate a substitute arbitrator. It was certainly not error for the District Court in this case to deny substitution at the behest of Dell. Even assuming that in the usual case, substitution of a neutral arbitrator would be an acceptable alternative, it is evident that this is not an ordinary case and we should affirm the District Court's denial of Dell's motion.