Filed 7/24/14  Baillie v. Assenzio CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMY LYNNE BAILLIE et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>THOMAS ASSENZIO,<br><br>　　　Defendant and Appellant. | A139144<br><br>(Alameda County<br>　Super. Ct. No. JCCP004688)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 30, 2014 be modified as follows:

1. In footnote 9, at pages 9 and 10, the date "December 4, 2014" should be "December 4, 2013".

2. In footnote 11, at page 13, the word "appellant" should be changed to "respondent" so that the sentence now reads:

"As explained above, we fail to understand and respondent fails to explain why a substitute arbitrator could not apply the NAF Code in the same straightforward manner as a NAF arbitrator."

There is no change in the judgment.  Respondents' petition for rehearing is denied.

Date: _____　　　　　　_____Acting P.J.

1

Filed 6/30/14 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS ASSENZIO,<br><br>      Defendant and Appellant,<br><br>v.<br><br>AMY LYNNE BAILLIE et al.,<br><br>      Plaintiffs and Respondents. | A139144<br><br>(Alameda County<br>  Super. Ct. No. JCCP004688) |

This is an appeal from a trial court order denying appellant Thomas Assenzio's motion to compel arbitration and to stay the proceedings. This motion was brought in response to a lawsuit filed against appellant (and others) by respondents Amy Lynne Baillie and Kathrine Rosas based on the allegedly illegal lending practices of a number of corporations under appellant's direct ownership, management or control. Appellant moved to compel arbitration and to stay the action. The trial court denied the motion after finding that an integral part of the parties' agreement to arbitrate – to wit, its designation of the National Arbitration Forum (NAF) as arbitrator and its Code of Procedure as the governing rules – could not be enforced given NAF's unavailability to arbitrate consumer disputes, with the result that arbitration under the agreement could not be compelled. For reasons discussed below, we reverse the trial court's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a class action lawsuit brought by respondents Baillie and Rosas on behalf of "All persons . . . who . . . entered into Instant Cash Agreements with Defendant

1

Lenders" via the "same standard form agreement."  Among other things, respondents seek on behalf of themselves and all other similarly situated persons, damages and injunctive relief based on defendants' allegedly "unfair, unlawful and deceptive schemes," including their charging and collecting of "usurious/unconscionable interest" from class members.

Defendants, mainly consisting of several corporate entities including Accounts Receivable Management of Florida Inc., Processing Solutions, LLC, MTE Financial Services, Inc., and Instant Cash USA, and Rio Resources, are involved in marketing short-term loans over the internet, processing loan applications and/or servicing these loans.[1]  Respondent Baillie obtained a $300 loan from "USFastCash" on or about July 2, 2006, as evidenced by a Note identifying as the lender defendant MTE Financial Services, Inc. dba Instant Cash USA.  Respondent Rosas, in turn, obtained a $300 loan from defendant Rio Resources on or about June 19, 2006, as well as a $300 loan from Instant Cash USA on or about November 3, 2006.

The original complaint, filed by respondent Baillie on May 22, 2007, also identified numerous "Doe" defendants.  In the third amended complaint, filed on November 3, 2010, appellant was first added as one of these "Doe" defendants, and respondent Rosas was added as a plaintiff/class representative.  The third amended complaint alleged that appellant "owned, controlled, managed, and/or directed defendants Processing Solutions, LLC, First East Inc., MTE Financial Services, Inc., Instantcashloantillpayday.com, Instant Cash USA, and Rio Resources."  Claims were thus raised against appellant based upon a theory of "piercing the corporate veil." Appellant initially contested the court's personal jurisdiction over him based on his Florida residency.  This jurisdictional challenge was ultimately unsuccessful, and the matter moved forward.

---

[1]     Defendant Processing Solutions, LLC is a Delaware company that acts as a servicing company for defendant MTE Financial Services, doing business as Instant Cash USA (MTE).  Processing Solutions assists MTE in marketing loans over the internet and processes loan applications submitted electronically to MTE online.

2

Before appellant was named as a defendant, however, defendants Processing Solutions, LLC, First East Inc., and Instant Cash USA moved to compel arbitration and to stay the proceedings. This motion was based on the arbitration agreement included in the standard form agreement allegedly entered into by the plaintiff class members entitled Agreement to Arbitrate All Disputes (hereinafter, Arbitration Agreement).[2] Among other

---

[2] The Arbitration Agreement, in its entirety, provides: "<u>AGREEMENT TO ARBITRATE ALL DISPUTES</u>: By signing below and to induce us, MTE Financial Services dba Instant Cash USA, to process your application for a loan, you and we agree that any and all claims, disputes or controversies that we or our servicers or agents have against you or you have against us, our servicers, agents, directors, officers and employees, that arise out of your application for one or more loans, the Loan Agreements that govern your repayment obligations, the loan for which you are applying or any other loan we previously made or later make to you, this Agreement to Arbitrate All Disputes, collection of the loan or loans, or alleging fraud or misrepresentation, whether under the common law or pursuant to federal or state statute or regulation, or otherwise, including disputes as to the matter subject to arbitration, shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ('NAF') in effect at the time the claim is filed. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. This Agreement to Arbitrate All Disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at <u>www.arb-forum.com</u>, or at 'National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405.' If you are unable to pay the costs of arbitration, your arbitration fees may be waived by the NAF. The cost of a participatory hearing, if one is held at your or our request, will be paid for solely by us if the amount of the claim is $15,000 or less. Unless otherwise ordered by the arbitrator, you and we agree to equally share the costs of a participatory hearing if the claim is for more than $15,000 or less than $75,000. Any participatory hearing will take place at a location near your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. [§§] 1-16. Judgment upon the award may be entered by any party in any court having jurisdiction. This Agreement To Arbitrate All Disputes is an independent agreement and shall survive the closing, funding, repayment and/or default of the loan for which you are applying. NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR A JURY DECIDE THE

things, the Arbitration Agreement provided that arbitration among the parties was required to be individual and binding, and would be held by and under the NAF Code of Procedure in effect at the time the claim(s) was filed, and that any claim should be filed at the NAF office or on its website. Further, with respect to covered claims, such as those raised in this lawsuit, the Arbitration Agreement set forth the following notice: "YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR A JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION." Finally, the Arbitration Agreement prohibited the arbitrator from conducting class or otherwise representative arbitrations.

For legal reasons wholly distinct from those implicated in this appeal, the trial court denied the other defendants' motion to compel and to stay proceedings. This court thereafter affirmed the trial court's decision (*Baillie v. Processing Solutions, LLC*, No. A125167 (May 27, 2010)), and the California Supreme Court denied defendants' petition for review (S184194, Aug. 11, 2010).[3]

Thereafter, on March 25, 2013, appellant filed the motion to compel arbitration and to stay court proceedings at issue in this appeal, also based on the above-described Arbitration Agreement.[4] In his motion, appellant, among other things, called upon the

---

DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION."

[3]     These defendants thereafter filed a renewed motion to compel arbitration based on a subsequently-decided United States Supreme Court case, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __, 131 S.Ct. 1740, 179 L.Ed.2d 742. However, this motion was denied on procedural grounds. In addition, on September 28, 2012, this case was removed to federal court, at which time the defendants again moved to compel, arguing the federal court was authorized to revisit earlier state court orders. However, the case was ultimately remanded to state court, with the federal court denying the motion without prejudice to refiling in state court "to the extent otherwise permissible." (See *Rosas v. USFastCash* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 173453 at *2-*3, fn. 1.)

[4]     Appellant filed separate such motions against respondent Baillie and respondent Rosas that were in all material regards identical. The trial court treated them collectively, as do we.

trial court to appoint a substitute arbitrator given that NAF, the arbitrator identified in the Arbitration Agreement, was no longer accepting consumer disputes such as the dispute in this case.

Appellant's motion was heard on June 7, 2013. The trial court preliminarily found that appellant had standing to enforce the Arbitration Agreement because he was alleged to be the agent or alter ego of a signatory, and that he was not bound by orders denying other defendants' motions to compel arbitration because they were made prior to his presence in this litigation. In addition, the trial court found that, under the Arbitration Agreement, issues of arbitrability were to be decided by the court rather than the arbitrator. The trial court then found the Arbitration Agreement was not enforceable for the following reasons. First, the court found the parties' designation of NAF, which no longer arbitrates consumer disputes, was an "integral" part of the Arbitration Agreement. In so finding, the trial court found of "particular significance" the fact that the Arbitration Agreement not only identified NAF as the arbitral forum, it also designated the NAF Code of Procedure as the applicable rules. The trial court then concluded that, because NAF is integral to the parties' agreement and is unavailable to arbitrate consumer disputes, "to appoint a substitute arbitrator would constitute a wholesale revision of the [Arbitration Agreement]," which the court declined to undertake. As such, the trial court denied appellant's motion to compel arbitration, prompting this appeal pursuant to Code of Civil Procedure section 1294, subdivision (a).

## DISCUSSION

Appellant challenges the order denying his petition to compel arbitration on the ground that the trial court erroneously refused to appoint a substitute arbitrator as required by Section 5 of the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (hereinafter, FAA). As stated above, the trial court reasoned that the parties' designation of NAF as arbitrator was an integral part of the Arbitration Agreement and, thus, that NAF's unavailability to arbitrate the parties' consumer dispute precluded its enforcement of the Arbitrator Agreement. According to appellant, the trial court's order and reasoning was a misapplication of law. The following legal principles govern appellant's challenge.

5

## I.    Standard of Review.

In the trial court, a motion to compel arbitration is subject to the following rules. "[Code of Civil Procedure] sections 1281.2 and 1290.2 create a summary proceeding for resolving these petitions. [Citation.] The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

On appeal, where no material facts are in dispute, we review the enforceability of the arbitration clause de novo. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174.) Here, the relevant material facts, most of which relate to specific terms of the Arbitration Agreement, are undisputed, triggering just such de novo review. And because, like other written agreements, the Arbitration Agreement is a matter of contract, California substantive law governs. (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626 [*Mitsubishi Motors Corp.*].)

However, the parties also agree that, pursuant to one specific term of the Arbitration Agreement, the FAA governs its enforceability.[5] As such, we must also look to federal case law for guidance in interpreting and applying the FAA.

## II.    The FAA and Relevant Caselaw.

As the United States Supreme Court instructs: "While the interpretation of an arbitration agreement is generally a matter of state law, [citations], the FAA imposes certain rules of fundamental importance . . . ." (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l*

---

[5]    The Arbitration Agreement provides: "This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16."

*Corp.* (2010) 559 U.S. 662, 681.) Of significance here are two such fundamentally important rules – first, "the basic precept that arbitration 'is a matter of consent, not coercion,' *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) [*Volt Info.*]" (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., supra,* 559 U.S. at p. 681), and second, the strong federal policy favoring arbitration that requires all doubts and ambiguities regarding the scope of arbitration agreements to be resolved in favor of the party moving to compel arbitration (*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 ["questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"]). Indeed, "the policy of enforceability established by section 2 of the FAA is binding on state courts as well as federal courts." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 380, 383-384; see also Code of Civ. Proc., § 1280 et seq. [California Arbitration Act].)

Here, in applying these guiding principles, we must determine whether the provision in the Arbitration Agreement designating NAF as arbitrator of the parties' disputes, and its Code of Procedure as governing rules, precludes the court from appointing a substitute arbitrator in light of the undisputed fact that NAF is no longer available to serve as arbitrator of commercial disputes such as the one involved in this case. Relying on Section 5 of the FAA (hereinafter, Section 5), appellant argues the trial court indeed has authority to appoint a substitute arbitrator under these circumstances. As appellant notes, Section 5 sets forth a mechanism for naming a substitute arbitrator when the agreement's designated arbitrator is not available to hear the dispute.[6]

---

[6]    Section 5 provides in relevant part as follows: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or

However, respondents, like the trial court, dispute the court's authority under Section 5 to appoint a substitute arbitrator, reasoning that appointing a substitute arbitrator in this case would run contrary to the parties' mutual intent under the Arbitration Agreement to designate NAF as exclusive arbitrator. In so arguing, respondents, like the trial court, rely on an exception to Section 5 rooted in federal case law where arbitrating parties' designation of a particular arbitrator or arbitral forum is deemed "integral" to their agreement to arbitrate. To determine which legal position should be adopted for purposes of this case, we take a closer look at this case law.[7]

The Third Circuit Court of Appeals has succinctly described the so-called "integral" test as follows: "In determining the applicability of *Section 5* of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was 'integral' to the arbitration provision or was merely an ancillary consideration. *See, e.g., Reddam v. KPMG LLP*, 457 F.3d 1054, 1061 (9th Cir. 2006) [*Reddam*], abrogated on other grounds by *Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931 (9th Cir. 2010); *Brown [v. ITT Consumer Fin. Corp.* (11th Cir. 2000) 211 F.3d 1217]*, at 1222. As the Eleventh Circuit has articulated the standard: '[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern," will the failure of the chosen forum preclude arbitration.' *Id*. In other words, a court will decline to appoint a substitute arbitrator, as provided in the FAA, only if the parties' choice of forum is 'so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end.' *Reddam*, 457 F.3d at 1061. In this light, the parties must have unambiguously expressed their intent

they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." (9 U.S.C.S. § 5.)

[7] Neither party challenges the general proposition that Section 5 permits the appointment of a substitute arbitrator where, as here, the arbitrator or arbitral forum designated in the underlying arbitration agreement is unavailable to hear the dispute. (See, e.g., *Khan v. Dell Inc.* (3d Cir. 2012) 669 F.3d 350, 356-358 [concluding "the unavailability of NAF to hear the disputes between Khan and Dell constitutes a 'lapse' within the meaning of Section 5"].)

8

not to arbitrate their disputes in the event that the designated arbitral forum is unavailable." (*Khan v. Dell Inc*. (3d Cir. 2012) 669 F.3d 350, 354.)

Thus, applying this standard to the case at hand, we must determine whether the Arbitration Agreement and, more specifically, its references to NAF, are an "integral" part of the parties' agreement such that appellant cannot compel arbitration in the face of NAF's unavailability.[8] The trial court found the "integral" standard met due primarily to two facts. First, as noted above, the Arbitration Agreement identifies NAF as the arbitral forum. Second, the Arbitration Agreement provides that the NAF Code of Procedure "shall" govern any arbitration among the parties.[9] The precise language of the

---

[8] We reject appellant's suggestion that we should decline to apply the "integral" test on the ground that it conflicts with Section 5, which, he says "always requires a court to appoint an arbitrator" when the designated arbitrator is unavailable. Despite language questioning the wisdom of the judicially-crafted "integral" exception to appointment of an arbitrator under Section 5 found in appellant's authority, *Green v. U.S. Cash Advance Illinois, LLC* (7th Cir. 2013) 724 F.3d 787, 790-793, numerous courts across the United States have recognized and applied this legal standard when deciding whether Section 5 provides a basis, under a particular arbitration agreement, to appoint an arbitrator other than the one identified in the agreement. (E.g., *Reddam, supra,* 457 F.3d at p. 1061; *Brown, supra,* 211 F.3d at p. 1222; *Khan v. Dell Inc., supra,* 669 F.3d at p. 356.) In doing so, these courts have found the "integral" or "ancillary concern" test consistent with well-established state principles of contract law requiring courts to effectuate the intent of the parties when deciding whether to enforce all or part of an arbitration agreement. (Eg., *Rivera v. Am. Gen. Fin. Servs*. (2011 N.M.) 259 P.3d 803, 812 ["[the integral test] . . . best complies with the admonition of the United States Supreme Court that a fundamental purpose of the FAA is to require that courts enforce arbitration agreements 'according to their terms.' *Volt Info*., 489 U.S. 479."]; *Khan v. Dell Inc., supra,* 669 F.3d at p. 354 ["the FAA respects the 'fundamental principle that arbitration is a matter of contract,' [citation], and that 'arbitration "is a matter of consent, not coercion" ' "].) We agree with these decisions. (Compare *Green v. U.S. Cash Advance Illinois, supra,* 724 F.3d at p. 791 ["When a court declares that one or another part of an arbitration clause is 'integral' and that the clause is therefore unenforceable as a matter of federal common law, it is effectively disagreeing with Congress, which provided that a judge can appoint an arbitrator when for 'any' reason something has gone wrong"].)

[9] We grant appellant's motion for judicial notice, dated October 2, 2013, of the NAF Code of Procedure, which, as noted above, is designated under the Arbitration Agreement to govern any arbitration proceedings arising under the agreement. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505 fn. 6, citing Evid. Code

Arbitration Agreement that relates to these facts reads as follows: "[Disputes] shall be resolved by binding individual . . . arbitration by and under the Code of Procedure of [NAF] in effect at the time the claim filed. . . . Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com, or at 'National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405.' " In addition, aside from the Arbitration Agreement itself, the parties also accept the relevance (albeit for different reasons) of one specific part of the NAF Code of Procedure, Rule 1.A, which provides in relevant part: "Parties who contract for or agree to arbitration by [NAF] or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures. . . . This Code shall be administered only by [NAF] or by any entity or individual providing administrative services by agreement with [NAF]."

We have carefully reviewed this relevant language within the legal framework prescribed by federal law. Having done so, we disagree with the trial court that this language is so clear as to establish the parties' intent that NAF, and only NAF, must arbitrate all disputes arising out of the Arbitration Agreement and, that, in the event of NAF's unavailability, the agreement itself should be deemed void. In particular, having considered the Arbitration Agreement, as we must, in light of the federal mandate to resolve *any ambiguities* in favor of the party seeking to compel arbitration, we identify several circumstances weighing *against* a conclusion that the NAF designation in this case is integral to the parties' agreement. (See *Mitsubishi Motors Corp., supra*, 473 U.S. at p. 626 ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"].) For example, we, like respondents, note that the Agreement's designation of NAF does not include any language of exclusivity, which other courts have deemed significant. (Cf. *Carideo v.*

§ 452, subd. (h) [authorizing judicial notice of "Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].) Appellant's request to file a reply in support of his motion for judicial notice, filed December 4, 2014, is therefore moot.

10

*Dell, Inc.* (W.D. Wash. 2009) 2009 U.S. Dist. LEXIS 104600, at *5 [finding the language, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY [NAF]," indicative that the NAF designation was integral to the parties' agreement]; compare *Adler v. Dell* (E.D. Mich. 2009) 2009 U.S. Dist. LEXIS 112204 at *2 [finding the NAF designation was not integral to the parties' agreement despite language in the contract that disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect"].) Also absent from the Arbitration Agreement is language stating, or even suggesting, that the parties harbored an intent to forego arbitration completely if NAF were unavailable. Quite to the contrary, the Arbitration Agreement states that "any and all claims, disputes or controversies . . . including disputes as to the subject matter of arbitration, shall be resolved by binding individual (and not class) arbitration . . . ." This language requiring all claims to be resolved by binding arbitration rather than by a court of law is, we conclude, more clear than the language identifying NAF as the arbitral forum and its Code of Procedure as the applicable law.

We also agree with appellant there is no readily apparent reason why a substitute arbitrator could not apply the NAF Code of Procedure to the dispute. As other courts have recognized, the NAF Code consists of "common procedural rules" often employed in legal proceedings. While respondents are correct that Rule 1.A of the NAF Code requires it to be "administered only by [NAF] or any entity or individual providing administrative services by agreement with [NAF]", other courts have not viewed this language as a bar to appointment of a substitute arbitrator under Section 5. In fact, the Seventh Circuit Court of Appeals just recently acknowledged that "the possibility [exists] of arbitration outside the Forum's auspices, but using its rules of procedure." (*Green v. U.S. Cash Advance Illinois, LLC* (7th Cir. 2013) 724 F.3d 787, 789. See also *Wright v. GGNSC Holdings, LLC* (S.D. 2011) 808 N.W.2d 114, 120 ["although a substitute arbitrator may not administer the NAF Code, a competent substitute arbitrator can apply

11

the NAF's rules of procedure that public codes cover. *See Carr* [*v. Gateway, Inc.* (2011) 241 Ill. 2d 15] at 31, 944 N.E.2d at 335 ('[I]t is possible in some cases for a substitute arbitrator to use the rules specified in an arbitration agreement and where that is so, the mere designation of particular rules to govern an arbitration will not prevent the naming of a substitute arbitrator under [S]ection 5.' (citing *Reddam,* 457 F.3d at 1060; *Brown,* 211 F.3d at 1222; *Zechman* [*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (N.D. Ill. 1990) 742 F. Supp. 1359] at 1365; *see also Adler v. Dell Inc.,* No. 08-CV-13170, 2009 U.S. Dist. LEXIS 112204, 2009 WL 4580739, at *5 (E.D. Mich. Dec. 3, 2009) ('The court instructs the parties to confer and agree on an alternative arbitrator who will apply the rules of NAF under its Code of Procedure, if possible.'); *Levy v. Cain, Watters & Assocs., P.L.L.C.,* No. 2:09-CV-723, 2010 U.S. Dist. LEXIS 9537, 2010 WL 271300, at *11 (S.D. Ohio Jan. 15, 2010) (ordering same) [fn. omitted]''].)[10]

The Ninth Circuit has reached a similar result in a case involving designation of the parties' use of the procedural rules of the National Association of Securities Dealers (NASD), but not the NASD forum itself. In concluding such designation was not integral to the parties' arbitration agreement, the Ninth Circuit reasoned: "The provision in the [arbitration agreement] does select the rules of the NASD, but does *not* state that the arbitration is to take place before the NASD itself. Had the latter been intended, the parties could easily have said so. In fact, a more recent version of [the arbitration agreement] reads: 'I agree to arbitrate with you any controversies . . . only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc. at my election.' The absence of similar language militates in favor of a decision that the provision in question here does not select a forum at all." (*Reddam, supra,* 457 F.3d at p. 1059.) We find this reasoning persuasive, and relevant to the case at hand.

---

[10] The South Dakota court appears to distinguish the verbs "administer" and "apply," noting that "review of the NAF Code reflects that NAF administration involve[s] what is commonly provided by many arbitration services available today," including other general arbitration administrators such as the American Arbitration Association (AAA) and the Judicial Arbitration and Mediation Services (JAMS). (*Wright v. GGNSC Holdings, LLC, supra,* 808 N.W.2d at p. 120.)

12

Moreover, we also find significant the fact that Rule 1.A expressly permits the parties to opt out of the NAF Code of Procedure and to "agree to other procedures." In light of this provision, we disagree with the trial court's conclusion, or at least the significance of its conclusion, that "there are simply no NAF rules currently in effect for [consumer] arbitrations" given NAF's decision to no longer arbitrate such disputes.[11] If anything, we find this provision adds to the ambiguity surrounding the parties' intent when confronted with the unavailability of NAF.[12]

[11]    For the same reasons just stated, we disagree with the similar reasoning of respondent's authority, *Sunbridge Retirement Care Associates LLC v. Smith* (Ga.Ct.App., Mar. 26, 2014, A13A2129) 2014 Ga. App. LEXIS 232, page *9, which was produced for the first time at oral argument. Specifically, the Georgia Court of Appeals held: "Even if a non-NAF arbitrator were appointed, the NAF Code would still apply under the terms of the parties' agreement. And because *the NAF Code has in effect been canceled*, Rule 48 of the Code authorizes the parties to pursue other remedies." (*Ibid*, italics added.) As explained above, we fail to understand and appellant fails to explain why a substitute arbitrator could not apply the NAF Code in the same straightforward manner as a NAF arbitrator.

Moreover, even aside from the procedural rules set forth in the NAF Code of Procedure, we note that any arbitrator hearing the parties' dispute, whether a NAF arbitrator or a substitute arbitrator, would nonetheless be called upon to apply the same substantive law with respect to the parties' claims. (*Wright v. GGNSC Holdings, LLC, supra,* 808 N.W.2d at p. 120 [noting that the NAF Code simply requires the arbitrator to apply the "applicable substantive law"].) Accordingly, it is far from clear that the appointment of a substitute arbitrator would have any effect on the actual outcome of the parties' arbitration.

[12]    Appellant points to another part of the NAF Code, Rule 48.D, which he contends could be relied upon as a basis for severing the Rule 1.A requirement that NAF or its affiliate administer the NAF Code. Respondents, in turn, contend that a court cannot sever any term or condition of an otherwise valid contract unless it first determines that the contract is by "its nature and purpose . . . susceptible of division" without undermining the parties' mutual intent. (See *Filet Menu, Inc. v. C.C.L. & G., Inc.* (2000) 79 Cal.App.4th 852, 860.) Here, the trial court made no such finding; nor was it asked to. We agree with appellant this severance provision, if anything, weighs against finding the NAF designation integral to the Arbitration Agreement. While we accept respondents' recitation of the general rules governing severance of a contract, we nonetheless conclude the incorporation of Rule 48.D into the Arbitration Agreement, without more, is probative of the broader issue of whether the parties mutually intended to arbitrate in the event of NAF's unavailability. (See *Jones v. GGNSC Pierre LLC* (D. S.D. 2010) 684

13

Thus, based on our reading of the Arbitration Agreement as a whole, including the provisions relied upon by both parties, we conclude the language identifying NAF as arbitrator and its Code of Procedure as the applicable procedural law is at best ambiguous as to whether the parties intended to forego their express agreement that all disputes "shall be resolved by binding individual arbitration" due to NAF's unavailability. In other words, whether the parties' designation of NAF was an integral or ancillary component of their agreement to arbitrate cannot be definitively determined on this record. (See *Brown, supra,* 211 F.3d at p. 1222; *Khan v. Dell Inc., supra,* 669 F.3d at p. 356.) And, under such circumstances, the United States Supreme Court mandates that we resolve this contractual ambiguity in favor of arbitration, not against it. (E.g., *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., supra,* 460 U.S. at pp. 24-25.) As respondents' own authority counsels: "[T]he mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement. If this were so, *section 5* of the Arbitration Act would not apply in any case where the parties specify an arbitrator that later becomes unwilling or unable to handle the arbitration. Such a construction would encourage parties to be as vague as possible in drafting their arbitration agreements to guard against a court refusing to apply *section 5* of the Act in the event the chosen arbitral forum became unavailable. *Section 5* anticipates that a named arbitral forum may become unavailable and it provides a mechanism to appoint a substitute." (Cf. *Carr v. Gateway, Inc., supra,* [241 Ill. 2d 15] 944 N.E.2d 327, 335 [concluding the designation of NAF as

F.Supp.2d 1161, 1166-1167 ["The severance provision indicates that the intention was not to make the NAF integral, but rather to have a dispute resolution process through arbitration"]; *Selby v. Deutsche Bank Trust Co. Ams*. (S.D. Cal. 2013) 2013 U.S.Dist. LEXIS 46101, at p. *38 ["the severability provision contained in the Agreement permits the references to NAF and the NAF Code to be removed without invalidating related provisions providing for the arbitration of all claims"].) This is particularly true when the NAF Code's severance provision is considered together with, one, the Arbitration Agreement's incorporation of Section 5 and its straightforward mechanism for naming a substitute arbitrator and, two, the federal mandate to resolve ambiguities in favor of the party compelling arbitration.

14

the arbitral forum was integral to the arbitration agreement where, *in addition to provisions designating NAF as the forum and its Code of Procedure as the governing rules*, a provision within the agreement expressly "penalizes any party for bringing a dispute in any forum other than the NAF"]. See also *Khan v. Dell Inc., supra,* 669 F.3d at p. 356 [noting "that the arbitration provision in the [arbitration agreement] specifically incorporated the FAA, 9 U.S.C. §§1-16, suggesting that, in the event of the NAF's unavailability, the FAA's procedures for addressing such a problem should apply"].)

Accordingly, we hold that, under Section 5, which the parties have specifically incorporated into the Arbitration Agreement, the trial court must appoint a substitute arbitrator in light of NAF's unavailability to conduct the arbitration under the NAF Code of Procedure in effect at the time the claim was filed unless, pursuant to Rule 1.A of that Code, "the parties agree to other procedures." The trial court's contrary conclusion thus requires us to reverse the subject order and remand for further proceedings consistent with our opinion.

## DISPOSITION

The order denying appellant's petition to compel arbitration is reversed, and the matter is remanded for further proceedings consistent with the conclusions reached herein.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

15