EASTERBROOK, Chief Judge.
Joyce Green contends that U.S. Cash Advance, from which she borrowed money, misstated the loan’s annual percentage rate and so violated the Truth in Lending Act, 15 U.S.C. § 1606. The lender asked the district judge to stay the litigation and direct arbitration under ¶ 17 of the loan agreement:
ARBITRATION: All disputes, claims or controversies between the parties of this Agreement, including all disputes, claims or controversies arising from or relating to this Agreement, no matter by whom or against whom, including the validity of this Agreement and the obligations and scope of the arbitration clause, shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum. This arbitration agreement is *789 made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT BUT HAVE AGREED TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION, EXCEPT THAT THE TITLE LENDER MAY CHOOSE AT TITLE LENDER’S SOLE OPTION TO SEEK COLLECTION OF PAYMENT(S) DUE IN COURT RATHER THAN THROUGH ARBITRATION. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY TITLE LENDER. The parties agree and understand that all other laws and actions, including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Agreement.
The agreement was signed on May 8, 2012. But the National Arbitration Forum has not been accepting new consumer cases for arbitration since July 2009, when it settled a suit by Minnesota’s Attorney General, who believed that the Forum was biased in merchants’ favor. The lender asked the district court to appoint a substitute arbitrator under 9 U.S.C. § 5. The judge declined, stating that the identity of the Forum as the arbitrator is “an integral part of the agreement”, that 1117 is void, and that the dispute will be resolved on the merits in court. 2018 WL 317046, 2013 U.S. Dist. LEXIS 11346 (N.D.Ill. Jan. 25, 2013). The lender has taken an interlocutory appeal, as 9 U.S.C. § 16(a)(1)(B) permits.
The district judge’s belief that ¶ 17 requires the arbitration to be conducted by the Forum departs from its language, which says that any dispute “shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum.” (Emphasis added.) The agreement calls for use of the Forum’s Code of Procedure, not for the Forum itself to conduct the proceedings. If ¶ 17 were designed to require arbitration to be conducted by the Forum exclusively, the reference to its Code would be surplusage; the only reason to refer to the .Code is to create the possibility of arbitration outside the Forum’s auspices, but using its rules of procedure.
Green observes that Rule 1.A of the Code includes this language: “This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.” Rule 48.C qualifies this, however: “In the event a court of competent jurisdiction shall find any portion of this Code ... to be in violation of the law or otherwise unenforceable, that portion shall not be effective and the remainder of the Code shall remain effective.” Rule 48.D continues: “If Parties are denied the opportunity to arbitrate a dispute, controversy or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law.” One would suppose that 9 U.S.C. § 5 is such an “applicable law.”
Rule 1.A is “unenforceable” in light of the Forum’s decision to cease conducting arbitrations. What’s more, -no author can control how or by whom a written work is *790 used. Copyright law allows owners to decide how to use' the texts; a declaration at the beginning of a detective novel that the reader must follow the text consecutively would not prevent the reader from skipping to the end to learn whodunit. The list of exclusive rights, 17 U.S.C. § 106, does not include a right to control how the owner of a copy uses the information it contains. Cf. Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879) (despite the author’s prohibition, the buyer of a book may make and sell forms that implement the book’s ideas); American Dental Association v. Delta Dental Plans Association, 126 F.3d 977 (7th Cir.1997). Patent law allows a proprietor to control how a patented article is used; with the exception of the rights in § 106, copyright law does not. The Forum does not require buyers to sign contracts promising to use the Code in whole, or not at all. Compare ProCD, Inc. v. Zeidenberg, 86 F.3d 1447 (7th Cir.1996). So the exclusivity claim in Rule 1.A is not enforceable, and an agreement to conduct arbitration under the Forum’s Code, with the Forum itself on the sidelines, is valid. Rules 48.C and 48.D say as much. All that remains is the selection of an arbitrator, and a district court can use § 5 to make the appointment.
Suppose this is wrong and that an arbitrator is forbidden to use the Forum’s Code of Procedure but must employ different rules. Would that affect the desirability of arbitration, from either a lender’s perspective or a customer’s? If, as the district judge thought, the designation of the Forum (or at least of its Code) is “integral” to the agreement, this implies a belief that the customer, the lender, or both would rather litigate than arbitrate under any other rules or in any other forum. Does that belief have any support? When the Forum stopped accepting arbitrations, did any merchant revise its contracts to eliminate .the arbitration clause? Has any customer insisted on the Forum as a condition of agreeing to arbitration? The- district court did not identify anyone, ever, for whom the answer has been “the National Arbitration Forum or no arbitration at all.”
Two courts of appeals have held that the identity of the Forum as arbitrator is not “integral” to arbitration agreements and that § 5 may be used to appoint a substitute. Khan v. Dell, Inc., 669 F.3d 350 (3d Cir.2012); Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1236 n. 13 (11th Cir.2012); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1222 (11th Cir.2000). The Supreme Court must have assumed this in CompuCredit Corp. v. Greenwood, — U.S.-, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012), which held that claims under the Credit Repair Organizations Act are arbitrable. The agreement in that case specified use of the Forum, see id. at 677 n. 2 (Ginsburg, J., dissenting), yet the Court saw no obstacle to enforcing the arbitration clause. We grant that Ranzy v. Tijerina, 393 Fed.Appx. 174 (5th Cir.2010), deems designation of the Forum “important” to arbitration and makes an agreement unenforceable once the Forum becomes unavailable, but Ranzy is not precedential. The decisions of the third and eleventh circuits, and the assumption of the Supreme Court, deserve greater weight.
Ranzy relied on In re Salomon Inc. Shareholders’ Derivative Litigation, 68 F.3d 554 (2d Cir.1995). The agreement in that case named the New York Stock Exchange as the exclusive forum for private dispute resolution. The Exchange’s rules gave it discretion whether to hear a dispute or send the parties to court. The Exchange’s Secretary thought that litigation would be preferable (the dispute arose from allegations that traders had rigged the trading price of Treasury securities), and the Exchange’s Board agreed. After *791 the Exchange returned the case to court, the district judge declined to appoint a substitute arbitrator under § 5. The second circuit affirmed, observing among other things that the parties had bargained not only for the Stock Exchange as the sole private forum but also for a procedure under which the Exchange could decide that litigation would be preferable. To use § 5 - to ■ appoint a substitute arbitrator would be to defeat both aspects of the contractual choice and override the chosen arbitrator’s decision. Paragraph 17 of the agreement between Green and U.S. Cash Advance differs in both respects that the second circuit thought important. It does not name the Forum as an “exclusive” private adjudicator, and it does not refer the dispute to a body that had, and used, discretion to send it back to court.
Salomon implemented the parties’ agreement that the chosen arbitrator may rule in favor of litigation. Green wants us to defeat her agreement with the lender— for that agreement conclusively chooses private dispute resolution. We are skeptical of decisions that allow a court to declare a particular aspect of an arbitration clause “integral” and on that account scuttle arbitration itself. Section 5 reads:
If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
This tells us that arbitration clauses remain enforceable if for “any” reason there is “a lapse in the naming of an arbitrator”. When a court declares that one or another part of an arbitration clause is “integral” and that the clause is therefore unenforceable as a matter of federal common law, it is effectively disagreeing with Congress, which-provided that a judge can appoint an arbitrator when for “any” reason something has gone wrong. Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), tells courts not to add to, or depart from, the standards in the Federal Arbitration Act. An “integral part” proviso to § 5 sounds like the sort of addendum that Hall Street forbids.
Section 2 of the Arbitration Act could provide a better foundation for an “integral part” escape hatch. Section 2 says that arbitration agreements are enforceable “save upon such grounds as exist at law or in equity for the revocation of any contract.” . This includes all general principles of state law, though not any arbitration-specific doctrines. See, e.g., Marmet Health Care Center, Inc. v. Brown, — U.S.-, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012); AT&T Mobility LLC v. Concepcion, — U.S.-, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). So if an error-such as the parties’ mutual, but mistaken, belief that the National Arbitration Forum was available — would permit revocation of the contract under ordinary statelaw principles, the district court could declare the contract as a whole unenforceable. But neither side has asked for that relief or even contended that it would be possible under state law. The identity of the arbitrator is not so important that the whole *792 contract is vitiated. Nor does either side contend that a mutual mistake of fact allows ¶ 17 to be excised as a matter of general contract law.
The origin of the “integral part” approach appears to be dictum in Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. 1359 (N.D.Ill.1990). We cannot find an earlier use of the word “integral” in connection with § 5 of the Federal Arbitration Act. In the course of granting an employer’s motion to arbitrate a dispute, the district judge observed in passing that the choice of a particular forum was not “integral” to the parties’ bargain. The opinion did not say why an affirmative answer would matter or give any legal reason for asking the question, though it did cite National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 328 (5th Cir.1987), which had asked whether a particular forum was an “essential part of the [parties’] bargain.” The fifth circuit did not discuss § 5 (National Iranian Oil concerned forum selection, not the availability of the parties’ chosen arbitrator) or specify the provenance of the “essential part” inquiry, though by citing the Restatement of Contracts and its doctrine of severability it implied a source in common law. In the fashion of a rumor chain, later decisions picked up on and elaborated the language of these two decisions. Today opinions such as Khan and Ranzy proceed as if it were an established rule of law that § 5 cannot be used to appoint a substitute arbitrator when the contractual designation was an “integral part” of the bargain, and they proceed to disagree about whether a given designation is “integral.”
As far as we can tell, no court has ever explained what part of the text or background of the Federal Arbitration Act requires, or even authorizes, such an approach. In recent years the Supreme Court has insisted that the Act not be added to in a way that overrides contracts to resolve disputes by arbitration. American Express Co. v. Italian Colors Restaurant, — U.S. -, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), is the most recent in this line of decisions. The Court observed in American Express (id. at 2311-12) that adding requirements to the Act can prevent arbitration from being a fast and economical process. That’s true of an “integral part” inquiry. How could a district judge tell what is “integral” without a trial at which parties testify about what was important to them and lawyers present data about questions such as whether consumers or businesses shifted from arbitration to litigation when the Forum stopped accepting new consumer disputes for resolution? The process would be lengthy, expensive, and inconclusive to boot.
Instead of asking whether one or another feature is “integral,” a court could approach this from a different direction and assume that a reference to an unavailable means of arbitration is equivalent to leaving the issue open. What if an arbitration clause were shorn of details? What if it did not specify how many arbitrators, what forum, or any other administrative matters? Suppose ¶ 17 read, in full: “Any disputes arising out of this contract will be arbitrated.” Could a court then use § 5 to supply particulars? If it could, then it would be hard to see any problem using § 5 in the dispute between Green and U.S. Cash Advance.
The answer is yes. Section 5 applies “if no method be provided” in the contract— that is, if the parties use the sort of detail-free clause we have just imagined. We held in Schulze and Burch Biscuit Co. v. Tree Top, Inc., 831 F.2d 709, 715-16 (7th Cir.1987), that a clause providing that “all disputes under this transaction shall be arbitrated in the usual manner” could be implemented through judicial orders under § 5 even though the parties had not estab *793 lished any “usual manner.” Other circuits likewise have used § 5 to complete detail-free arbitration clauses. See, e.g., Bethlehem Mines Corp. v. United Mine Workers, 494 F.2d 726, 730 (3d Cir.1974); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 421 (5th Cir.1962); Plumbing and Pipefitting Association v. Bechtel Construction Co., 128 F.3d 1318, 1320-24 (9th Cir.1997); Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1310-13 (11th Cir.2005).
Paragraph 17 makes one thing clear: These parties selected private dispute resolution. Courts should not use uncertainty in just how that would be accomplished to defeat the evident choice. Section 5 allows judges to supply details in order to make arbitration work. The district judge must appoint an arbitrator, who will resolve this dispute using the procedures in the National Arbitration Forum’s Code of Procedure.
Vacated and Remanded