J-E01002-15

2015 PA Super 248

| | |
|---|---|
| PATRICK J. MACPHERSON, EXECUTOR OF THE ESTATE OF RICHARD MACPHERSON, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THE MAGEE MEMORIAL HOSPITAL FOR CONVALESCENCE D/B/A MAGEE REHABILITATION HOSPITAL, JEFFERSON HEALTH SYSTEM, INC., TJUH SYSTEM, MANOR CARE OF YEADON PA, LLC, D/B/A MANORCARE HEALTH SERVICES-YEADON, HCR MANOR CARE, INC., MANORCARE, INC., HCR HEALTHCARE, LLC, HCR II HEALTHCARE, LLC, HCR III HEALTHCARE, LLC | |
| APPEAL OF: MANOR CARE OF YEADON PA, LLC, D/B/A MANORCARE HEALTH SERVICES-YEADON, HCR MANOR CARE, INC., MANORCARE, INC., HCR HEALTHCARE, LLC, HCR II HEALTHCARE, LLC, HCR III HEALTHCARE, LLC | |
| Appellants | No. 80 EDA 2013 |

Appeal from the Order Entered November 20, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 191 Oct. Term 2011

BEFORE:  BOWES, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J.,
         OLSON, J., WECHT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY MUNDY, J.:          **FILED NOVEMBER 25, 2015**

I respectfully dissent from the Court's decision to reverse the trial court's order and to direct that this case be referred to arbitration.[1] I base my disagreement with the Majority primarily on our Supreme Court's recent decision in *Wert v. Manorcare of Carlisle PA, LLC*, --- A.3d ---, 2015 WL 6499141 (Pa. 2015) (plurality).[2]

In *Wert*, our Supreme Court considered an arbitration agreement, which provided that "any disputes shall be resolved **exclusively** by binding

_____

[1] At the outset, I note that MacPherson does not challenge the decedent's lack of capacity to sign the arbitration agreement. MacPherson's Brief at 36. Therefore, it is unnecessary for the Majority, in my respectful view, to engage in its own factfinding based on the decedent's medical records in an effort to decide an issue that MacPherson does not wish to pursue in this Court. **See generally** Majority Opinion 15-16. In my view, the Majority should summarily note that, to the extent the trial court decided a question of capacity, the parties agree that said issue is not in dispute in this case, and note that the trial court was wrong to decide it.

[2] I disagree with the Majority's pronouncement that any argument as to the NAF Code of Procedure is waived for failing to include the Code in the certified record. **See** Majority Opinion at 23-24. There is no actual dispute in this case about the relevant rules in the NAF code. Manor Care acknowledges the Code and quotes from it in its reply brief. **See** Manor Care's Reply Brief at 15 (stating, "Code Rule 1A states that '[t]his Code shall be administered only by the [NAF] or by any entity or individual providing administrative services by agreement with the National Arbitration Forum'").

Furthermore, both this Court's opinion in *Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215 (Pa. Super. 2010) and our Supreme Court's opinion in *Wert* quote the relevant rules from the NAF Code. *Wert*, *supra* at *9 (quoting Rule 1(A) in full); *Stewart*, *supra* at 216-217. Because this Court, and our Supreme Court have already published and interpreted Rule 1(A), there is nothing additional for this Court to review on this issue. As I explain *infra*, under *Wert*, the adoption of the NAF Code of Procedure alone renders the agreement unenforceable. As a result, I do not agree that MacPherson has waived this argument.

arbitration to be conducted … in accordance with the [NAF] Code of Procedure, which is hereby incorporated into this Agreement[.]"  ***Wert***, ***supra*** at *10 (brackets, ellipses, and emphasis in original; internal quotation marks omitted).  Our Supreme Court held that because the NAF Code states that only the NAF can administer its own code, this was an "integral and non-severable" provision of the arbitration agreement.  ***Id.*** at *5, 10.  Our Supreme Court noted, as did this Court in ***Stewart***, that "the NAF must administer its code unless the parties agree to the contrary."  ***Wert***, ***supra*** at *10.  Our Supreme Court further held that Section 5 of the Federal Arbitration Act, pertaining to appointment of alternate arbitrators, could not save the agreement.  ***Id.***; ***see also generally*** 9 U.S.C. § 5.

> Pursuant to the reasoning of the ***Stewart*** court and the majority of our sister jurisdictions, we find that, post-consent decree, Section five of the FAA cannot preserve NAF-incorporated arbitration agreements unless the parties made the NAF's availability non-essential by specifically varying the terms of its procedure.  Regardless of whether Section five **may** apply where there is a lapse in the administrator, **by its own rules, the NAF must administer its code** unless the parties agree to the contrary.

***Wert***, ***supra*** (some emphasis added).

In the case *sub judice*, the arbitration agreement defines the arbitration panel as three arbitrators, whether from the NAF or otherwise. Majority Opinion at 6.  In my view, there is no meaningful difference between the provision in ***Wert*** that states "shall be resolved **exclusively** by binding arbitration to be conducted ... in accordance with the [NAF] Code of

Procedure, which is hereby incorporated into this Agreement[,]" and the provision here that states "[t]he Panel shall apply NAF's Code of Procedure[.]" **Wert**, **supra** at *10; Majority Opinion at 7. Consistent with our Supreme Court's view, it is academic that another arbitrator could be chosen and "[c]onceivably, [] apply the designated rules and procedure." Majority Opinion at 25. Under **Wert**, the reliance on the NAF Code (the choice of law), as opposed to the NAF's unavailability itself (the choice of forum), is sufficient legal basis **alone** to render the agreement unenforceable.[3]

Turning to this case, the Majority concludes that **Wert** does not apply on several grounds. First, the Court concludes that because **Wert** is a plurality opinion, it is not binding. Majority Opinion at 20. However, "[i]n cases where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or []agrees, those portions of agreement gain precedential value." **Commonwealth v. Brown**, 23 A.3d 544, 556 (Pa. Super. 2011). "[H]owever, [if] the concurrence does not explicitly state its agreement or disagreement with the plurality, we must look to the

---

[3] If the Majority were correct that the choice of forum clause was controlling in **Wert**, presumably our Supreme Court would have simply applied Section 5 of the FAA, which it acknowledged controlled the agreement. Then another forum would have been chosen pursuant to Section 5, and our Supreme Court would have reversed this Court's judgment and referred the case to arbitration.

substance of the concurrence to determine the extent to which it provides precedential value to points of agreement." *Id.*

The Majority is correct that *Wert* is a plurality opinion, authored by Justice Stevens and joined in full by Justice Todd. The Chief Justice filed a concurring opinion, noting that he agreed with some of the plurality's reasoning, but relied more on Judge Hamilton's dissent in *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787 (7th Cir. 2013). In *Green*, Judge Hamilton opined, as our Supreme Court did in *Wert*, that the arbitration agreement at issue in *Green* was unenforceable in part because "[t]he terms of the parties' contract require application of the [NAF] Code … [and t]he [NAF] Code requires that it be administered only by the [NAF]." *Id.* at 795 (Hamilton, J., dissenting).[4] The Chief Justice explicitly stated that he agreed with Judge Hamilton's analysis regarding Rule 1(A) of the NAF Code, which specifies that only the NAF can administer it. *Wert*, *supra* at *10 (Saylor, C.J., concurring). Therefore, three justices out of five in *Wert* agreed that the NAF Code issue rendered the arbitration agreement unenforceable. Thus, the portion of *Wert* pertaining to the requirement in Rule 1(A) that NAF administer its own Code, which is central to the conclusion in *Wert* that the arbitration agreement therein was

---

[4] The Chief Justice's concurrence specifically cited to pages 795-796 of Judge Hamilton's dissent in *Green*. *Wert*, *supra* at *10 (Saylor, C.J., concurring), *citing* *Green*, *supra* at 795-796 (Hamilton, J., dissenting).

unenforceable, is precedential and binding on this Court. ***See Brown***, ***supra***.

The Majority next concludes that the arbitration agreement in **Wert** is different than the one in the instant case. The Majority asserts that **Wert** does not apply because "the plain language of the Agreement does not evince an intent to arbitrate **only** before the NAF." Majority Opinion at 22 (emphasis in original). The Majority then cites to the portion of the agreement that states that the parties can select another administrator or none at all if the NAF is unavailable to serve. ***Id.*** In the Majority's view, **Wert** does not control this case because "the language in the instant Agreement is … permissive, not mandatory, and provides for an alternative to NAF if it is unable or unwilling to serve, or if the parties choose otherwise." ***Id.***

Respectfully, the Majority misconstrues and misapplies **Wert**, where our Supreme Court rejected this reasoning. The appellants in **Wert** argued, as Manor Care does here, that the parties were free to agree upon another arbitrator. According to our Supreme Court, the fact that another administrator or arbitrator could be chosen, is legally irrelevant. There is no legal difference whether another arbiter would be chosen because it is expressly stated in the arbitration agreement, as in this case, or pursuant to Section 5 of the FAA. ***Compare*** Majority Opinion at 22 (quoting the arbitration agreement as stating, "[i]f the Parties mutually agree in writing

not to select NAF or if the NAF is unwilling or unable to serve as the Administrator, the Parties shall agree upon another independent entity to serve as the Administrator, unless the Parties mutually agree to not have an Administrator[]"), **with** 9 U.S.C. § 5 (stating, "if for any other reason there shall be a lapse in the naming of an arbitrator … or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator … who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein []).  As the Majority acknowledges, **Wert** states that "[s]ection five of the FAA cannot preserve NAF-incorporated arbitration agreements unless the parties made the NAF's availability non-essential **by specifically varying the terms of its procedure**."  **Wert**, **supra** at *10 (emphasis added).  Therefore, in this regard, the Majority's insistence that **Wert** cannot apply because the parties did not agree to exclusively arbitrate through NAF as an entity is misguided.  The fatal provision in **Wert** was not, as the Majority concludes, "an exclusive forum-selection clause[.]"  Majority Opinion at 25 (emphasis omitted).  The issue in **Wert** was an exclusive choice of law clause.  Regardless of the chosen forum, the arbitration agreement's choice-of law provision **requires**, as did the one in **Wert**, that said forum apply the NAF Code.  **See generally** Majority Opinion at 6-7.

The Majority goes on to state that **Wert** does not apply because the provisions referring to the NAF Code can be severed under the severance

clause of the instant agreement.  Majority Opinion at 26.  However, our Supreme Court has already concluded in **Wert** that the provision regarding the NAF Code is "integral **and non-severable**."  **Wert**, **supra** at *10 (emphasis added).  We are not at liberty to disregard the judgment of our Supreme Court in this respect.  Based on these considerations, I conclude that Manor Care is not entitled to relief on this issue, either by waiver, or on its merits.

Based on the foregoing, and in light of our Supreme Court's decision in **Wert**, I conclude the trial court did not err.[5]  Accordingly, I would affirm the trial court's November 20, 2012 order.  I respectfully dissent.

_____

[5] Because Manor Care is not entitled to relief on the **Stewart** issue, the trial court was correct to overrule Manor Care's preliminary objections on this basis alone.  Therefore, Manor Care's other issues are moot for the purposes of this appeal.  However, I do note that MacPherson argues that the arbitration agreement should not be enforced because it would be "impermissible under Pennsylvania law" to have him pursue "one joint tortfeasor in court and the others in a separate arbitration proceeding[.]" MacPherson's Brief at 45.  Earlier this year in **Taylor v. Extendicare Health Facilities, Inc.**, 113 A.3d 317 (Pa. Super. 2015), *appeal granted*, --- A.3d ---, 2015 WL 5569766 (Pa. 2015), this Court announced a rule that it was legally impermissible for a trial court to require that survival and wrongful death claims be litigated in two forums where there were other defendants in the case that did not agree to arbitrate.

Here, the Majority concludes that MacPherson has not alleged that the hospital defendants and Manor Care were joint tortfeasors, precluding the application of **Taylor** to this case.  Majority Opinion at 28 n.12.  Joint tortfeasors are defined as "parties who either act together in committing a wrong **or whose acts, if independent of each other, unite to form a single injury**."  **L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.**, 777 A.2d 1090, 1095 (Pa. Super. 2001) (citation omitted;
*(Footnote Continued Next Page)*

Judge Lazarus and Judge Wecht join this dissenting opinion.

*(Footnote Continued)* ────────────

emphasis added). Instantly, MacPherson's complaint alleged that the hospital defendants caused the decedent "mental and physical pain, suffering and inconvenience, loss of life's pleasures and **aggravation of pre-existing medical conditions, and expense of otherwise unnecessary hospitalizations … up to and including the time of his death**[.]" MacPherson's Amended Complaint, 3/19/12, at ¶ 212 (emphasis added). MacPherson alleged that Manor Care caused "(a) severe permanent injuries resulting in severe pain, suffering, and disfigurement (b) mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity (c) loss of capacity for enjoyment of life, (d) **expense of otherwise unnecessary hospitalizations**, medical expenses and residency at the ManorCare Facility (e) **aggravation of his pre-existing medical conditions**, and (f) death." ***Id.*** at ¶ 235 (emphases added). Therefore, MacPherson's amended complaint on its face alleges that the hospital defendants and Manor Care's acts, "independent of each other, unite[d] to form" more than one of the alleged injuries listed in the same. ***L.B. Foster Co.***, ***supra***. Therefore, in my view, for some claims of injury, the hospital defendants and Manor Care are alleged to be joint tortfeasors, and I would apply ***Taylor*** to this case in the alternative.