In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-2055

JAMES HUNT,

*Plaintiff,*

*v.*

MOORE BROTHERS, INC., *et al.*,

*Defendants-Appellees.*

APPEAL OF: JANA YOCUM RINE

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:15-cv-00433-MJR-SCW — **Michael J. Reagan**, *Chief Judge*.

———————————

ARGUED JANUARY 18, 2017 — DECIDED JUNE 29, 2017

———————————

Before WOOD, *Chief Judge*, and POSNER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. James Hunt worked as a truck driver in Nebraska. On July 1, 2010, he signed an Independent Contractor Operating Agreement with Moore Brothers, a small company located in Norfolk, Nebraska. Three years later, Hunt and Moore renewed the Agreement. Before the second

term expired, however, relations between the parties soured. Hunt hired Attorney Jana Yocum Rine to sue Moore on his behalf. She did so in federal court, raising a wide variety of claims, but paying little heed to the fact that the Agreements contained arbitration clauses. Rine resisted arbitration, primarily on the theory that the clause was unenforceable as a matter of Nebraska law. Tired of what it regarded as a flood of frivolous arguments and motions, the district court granted Moore's motion for sanctions under 28 U.S.C. § 1927 and ordered Rine to pay Moore about $7,500. The court later dismissed the entire action without prejudice.

## I

Rine has appealed from that order. We begin with a word about our appellate jurisdiction. The district court's order of dismissal represented its decision that this dispute belongs in the arbitral forum selected by the parties, not the court. Such a dismissal is analogous to one based on *forum non conveniens*. Like a dismissal for lack of subject-matter jurisdiction, it is final and appealable even though it is said to be without prejudice. *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 583–84 (7th Cir. 2008); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). *Manez* explains why. There we allowed a lawyer to appeal a sanctions order after the underlying case had been dismissed "without prejudice" on *forum non conveniens* grounds. The critical point was that the U.S. court was finished with the case; as we said, "the phrase 'without prejudice' means that although the dismissal is 'final' in the sense that plaintiffs are finished before the U.S. courts, they still are free to refile the case in another, appropriate forum … ." *Manez*, 533 F.3d at 583–84. The same is true here. The merits of this dispute will be resolved by the

arbitrators, and any remaining role for the court will concern only the question whether the award should be recognized and enforced. Because the judgment is thus final for purposes of appeal, we have no need to consider whether the sanctions order also qualifies as an appealable collateral order under such cases as *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009), and *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). With our jurisdiction secure, we may proceed to the merits.

## II

The relevant part of the arbitration clauses in the Agreements reads as follows:

> This Agreement and any properly adopted Addendum shall constitute the entire Agreement and understanding between us and it shall be interpreted under the laws of the State of Nebraska. … To the extent any disputes arise under this Agreement or its interpretation, we both agree to submit such disputes to final and binding arbitration before any arbitrator mutually agreed upon by both parties.

When Rine decided to take formal action on Hunt's part, she ignored that language and filed a multi-count complaint in federal court. The complaint was notable only for its breadth: it accused Moore of holding Hunt in peonage in violation of 18 U.S.C. § 1581 (a criminal statute), and of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; the federal antitrust laws, 15 U.S.C. §§ 1, 4, 14; the Illinois Employee Classification Act, 820 ILCS 185/1 *et seq.*; and for good measure, the Illinois tort of false representation.

Relying on the Federal Arbitration Act (FAA), 9 U.S.C. § 1
*et seq.*, Moore responded with a motion to compel arbitration
and to stay the litigation; it also sought the appointment of an
arbitrator pursuant to section 5 of the FAA, 9 U.S.C. § 5. Rine
objected on several grounds. First, she asserted that Hunt had
no obligation to comply with the arbitration clause because
Moore had materially breached the Agreements. Second, she
asserted that the Agreements fell outside the scope of the FAA
because Hunt was a transportation worker. See 9 U.S.C. § 1;
*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("Sec-
tion 1 exempts from the FAA only contracts of employment of
transportation workers."). Third, Rine resisted Moore's re-
quest for a court-appointed arbitrator, noting that the clause
provided for a person "mutually agreed on by the parties."

The district court made short shrift of Rine's arguments. It
rejected the assertion that an alleged breach of the underlying
contract relieves a party from an arbitration agreement; by
that reasoning no one would ever arbitrate a contract dispute,
because the arbitration agreement would go up in smoke as
soon as the dispute arose. Rine's effort to bring Hunt under
the transportation-worker exception also failed, the court
said, because the complaint conceded that he was an "inde-
pendent truck owner operator," not an employee. Rine pre-
vailed only on her procedural argument against a court-ap-
pointed arbitrator: the judge found this step premature, and
directed the parties to try to do this themselves. They took
some steps in that direction, but they never agreed on anyone.

This was the backdrop to Rine's ill-fated return to the dis-
trict court. Less than two months after the judge told the par-
ties to agree on an arbitrator, Rine filed a motion reporting
that their efforts had failed. This revealed, she said, that the

arbitration clause was nothing more than an "agreement to agree," unenforceable under Nebraska law. The district court rejected this reasoning. It noted that Rine should have raised this argument earlier and that in any event it was wholly without merit. The FAA preempts conflicting state law, and a delay in the selection of an arbitrator does not affect the enforceability of an arbitration clause. *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791–92 (7th Cir. 2013). This was the point at which the court imposed the sanctions that are the subject of Rine's appeal.

## III

Rine offers several reasons for setting aside the district court's order of sanctions, even as she acknowledges that the court has wide discretion over such matters. See *United States v. Rogers Cartage Co.*, 794 F.3d 854, 862 (7th Cir. 2015). She complains that the court based its order exclusively on a finding of objective unreasonableness, without finding subjective bad faith on her part. Her premise—that both are needed—is mistaken: while subjective bad faith is sufficient to support section 1927 sanctions, "such a finding is not necessary; 'objective bad faith' will also support a sanctions award." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016) (citation omitted).

Rine insists that the arbitration clause was not enforceable as a matter of Nebraska law, and so she was justified in resisting its application. She also attacks the district court's conclusion that the FAA preempts whatever Nebraska law has to say on the subject, and asserts that her motion to lift the stay and vacate the order compelling arbitration was justified. This is so, she says, because she pointed to some precedent for the position that if an arbitration agreement is found to be unenforceable after a stay pursuant to FAA section 3 is entered, the

party opposing arbitration is entitled to file a motion to lift the stay. See 9 U.S.C. § 3.

We are unpersuaded by Rine's arguments. The fundamental flaw underlying her entire course of conduct is her disregard of the long line of Supreme Court decisions upholding the enforceability of arbitration clauses exactly like the one in the Hunt–Moore Agreements. As we noted earlier, Rine's theory in the district court was that the arbitration clause was only an agreement to agree in the future and thus was unenforceable under Nebraska law. For support, she pointed to *Nebraska Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472 (Neb. 2001) and *T.V. Transmission, Inc. v. City of Lincoln*, 374 N.W.2d 49 (Neb. 1985). Yet neither of those cases has anything to do with arbitration, and so neither is of any use to Rine, which perhaps is why she has not cited them on appeal.

As the Supreme Court repeatedly has said—most recently in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017)—"[t]he Federal Arbitration Act … requires courts to place arbitration agreements on equal footing with all other contracts." *Id.* at 1424 (internal quotation marks omitted). In *Kindred Nursing*, the Kentucky Supreme Court held that its state constitution forbade a person with a general power of attorney from entering into an arbitration agreement for his principal. The Supreme Court found this state law to be incompatible with the FAA because it singled out arbitration agreements for disfavored treatment, in violation of the equal-treatment principle that applies to arbitration agreements. See also *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). And there is more: the Court has also held that arbitration clauses should be generously construed. See *Granite*

*Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010). Rine's position is inconsistent with this guidance.

The fact that an agreement to arbitrate leaves for later negotiations the selection of the particular arbitrator does not render that agreement so vague as to be unenforceable. If that were the case, then section 5 of the FAA, which provides for the court to appoint an arbitrator in some circumstances, would be pointless. Provisions in which the parties must agree on one or more arbitrators are common. If they cannot do so, as apparently happened in this case, the court is empowered to step in and "designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein … ." 9 U.S.C. § 5; see also *Green*, 724 F.3d at 791 ("[A]rbitration clauses remain enforceable if for 'any' reason there is 'a lapse in the naming of an arbitrator.'"). *Green* established that the absence of an obligatory process for designating an arbitrator is not the kind of lacuna that prevents the enforcement of the arbitration agreement.

That is enough to show that Rine's effort to avoid arbitration was doomed. But if we had any doubts about the district court's imposition of sanctions, the remainder of Rine's conduct in the litigation would resolve them. Section 1927 permits sanctions against a lawyer who "so multiplies the proceedings in any case unreasonably and vexatiously" that the lawyer should be responsible for the excess costs, expenses, and attorney's fees borne by the other side. 28 U.S.C. § 1927. This is the authority on which the district court relied. As we said earlier, the court has broad discretion in implementing this statute. We will reverse only if no reasonable person

could have come to the same conclusion, in these circumstances.

This was a simple commercial dispute between Hunt and Moore, but one would never know that from reading Rine's complaint. She blew it up beyond all rational proportion. One count asserted that there was an unspecified civil right of action to enforce the criminal laws against peonage. 18 U.S.C. § 1581. There is no support whatsoever for that theory. As far as we can tell, only one court has considered it, and that judge rejected the argument that section 1581 creates a civil right of action. *Turner v. Unification Church*, 473 F. Supp. 367 (D. R.I. 1978). Her RICO and antitrust arguments were also beyond the pale. There is no RICO enterprise in sight, no pattern of racketeering activity, and no conspiracy between Moore and any other entity, as far as this record shows. And it is clear under the antitrust laws that a simple decision by one firm to stop dealing with another firm at a different point along the distribution chain does not violate Sherman Act § 1, 15 U.S.C. § 1. See *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998). It is also frivolous to imply that Moore had the kind of market power necessary to support a claim under Sherman Act § 2, 15 U.S.C. § 2. As for the Illinois Employee Classification Act, 820 ILCS 185/1 *et seq.*, while it does at least address the "practice of misclassifying employees as independent contractors," *id.* § 3, nothing hints at why Illinois law governs this relationship between a Nebraska truck driver and a small Nebraska company. The same is true of the claim that relies on Illinois common law.

So Rine was off to a bad start, even before she filed the motion that prompted the district court's sanctions: her complaint was a disaster, and her efforts to avoid arbitration were

meritless. Moreover, the key motion was one under Federal Rule of Civil Procedure 60(b), but Rine failed to show the exceptional circumstances required by that rule. See *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). As the district court pointed out, Rine was "not offering newly discovered evidence, or arguing fraud or misconduct … . Nor [was] counsel arguing that the Court's prior findings … [were] incorrect." She was instead introducing a meritless theory that the arbitration clause was unenforceable as a matter of Nebraska law.

This court had already squarely rejected Rine's theory in *Green*, *supra*. Rine has tried to distinguish *Green* in her brief before this court, but she has missed the forest for the trees. She describes the question in *Green* as whether the clause requiring that the arbitrator be named by the parties was so central to the agreement that the arbitration could not proceed if it failed. But she brushes past the fact that *Green* rejected this way of thinking about the problem. See 724 F.3d at 791–92. Instead, we asked whether "a reference to an unavailable means of arbitration is equivalent to leaving the issue open." *Id.* at 792. The answer, we said, is "yes." *Id.* Indeed, *Green* went further than the present case requires, by suggesting that "detail-free" arbitration clauses are enforceable. The district court, though not compelled to do so, was entitled to regard Rine's approach as so objectively unreasonable that it called for some kind of sanction under section 1927.

To determine the amount of sanctions it was prepared to impose, the court ordered Moore to submit an affidavit describing all fees that it had incurred in responding to Rine's motion. Moore did so, and based on the materials it submitted, the court settled on $7,427 (representing 27.6 hours of

work) as the money Rine had to pay. This is a reasonable measure of the cost Rine imposed on her opponent. She argues that the sanction was too high, but she offers no support for that position other than a convoluted argument to the effect that Moore should be compensated only for the pages of its brief that (she thinks) the district court adopted. As the district court put it, "it is unfathomable why she would invent an algorithm rather than relying on the information supplied in the Defendants' affidavit."

## IV

We have no need to consider whether the sanctions imposed by the district court were also justified under the court's inherent power. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Nor are we saying that the district court would have erred if it had denied Moore's sanctions motion. We hold only that it lay within the district court's broad discretion, in light of all the circumstances of this case, to impose a calibrated sanction on Rine for her conduct of the litigation, culminating in the objectively baseless motion she filed in opposition to arbitration. We therefore AFFIRM the district court's order imposing sanctions.