# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE GOOD TECHNOLOGY
CORPORATION STOCKHOLDER
LITIGATION

)
) C.A. No. 11580-VCL
)

## MEMORANDUM OPINION

Date Submitted: October 24, 2017
Date Decided: October 27, 2017

Joel Friedlander, Jeffrey M. Gorris, Christopher P. Quinn, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Randall J. Baron, A. Rick Atwood, Esther Lee, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California; *Attorneys for Stockholder Plaintiffs.*

Peter J. Walsh, Jr., Frank R. Martin, Travis R. Dunkelberger, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Attorneys for Defendants Christy Wyatt, Brandel L. Carano, John H.N. Fisher, Barry Schuler, Thomas Unterman, and Christopher Varelas.*

William M. Lafferty, Ryan D. Stottmann, Alexandra M. Cumings, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Defendants Oak Management Corporation, Oak Investment Partners X, LP, Oak X Affiliates Fund, LP, Draper Associates, L.P., Draper Associates, Inc., Draper Fisher Jurvetson ePlanet Partners, Ltd., Draper Fisher Jurvetson ePlanet Partners Fund, LLC, Draper Fisher Jurvetson ePlanet Ventures GmbH & Co. KG, Draper Fisher Jurvetson ePlanet Ventures L.P., Draper Fisher Jurvetson Management, LLC, Draper Fisher Jurvetson Fund VI, L.P., Draper Fisher Jurvetson Partners VI, LLC, DFJ Growth Fund 2006, Ltd., Draper Fisher Jurvetson Growth Fund 2006, L.P., Draper Fisher Jurvetson Growth Fund 2006 Partners, L.P., Draper Fisher Jurvetson Partners Growth Fund 2006, LLC, Draper Associates Riskmasters Fund III, LLC, Saints Rustic Canyon LLC, Saints Rustic Canyon, LP, Riverwood Capital Management, L.P., Riverwood Capital L.P., Riverwood Capital Partners L.P., Riverwood Capital Partners (Parallel-A) L.P. and Riverwood Capital Partners (Parallel-B) L.P.*

Edward B. Micheletti, Alyssa S. O'Connell, Sarah Runnells Martin, Lauren N. Rosenello, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Attorneys for Defendant J.P. Morgan Securities LLC.*

**LASTER, V.C.**

The plaintiffs sued an array of defendants that included individuals and their affiliated entities. The plaintiffs and a subset of the defendants[1] mediated with Robert A. Meyer, whom they engaged through JAMS. They reached an agreement in principle on the terms of a settlement, which they memorialized in a term sheet.

When they attempted to finalize a global settlement agreement, disputes arose. The term sheet includes a dispute resolution clause, which states: "Any disputes arising out of this Term Sheet or the final memorialization of the settlement shall be referred to Robert A. Meyer, who shall have the sole authority and exclusive jurisdiction to resolve any such disputes."[2] The D&O Defendants contacted Meyer, informed him that a "dispute has arisen" under the term sheet, and asked that he "take the matter under consideration promptly."[3] Meyer declined to a serve, opining that he was "disqualified from serving in that capacity given the numerous confidential communications that I have had with counsel for all concerned, as mediator, concerning the subject matter of the dispute."[4]

After receiving Meyer's response, the D&O Defendants moved to enforce the term sheet in this court. After reviewing a copy of the motion, Meyer wrote the parties:

> Although I continue to believe that I cannot appropriately decide specific issues involving the Term Sheet, I nevertheless believe that it was the

---

[1] These defendants call themselves the "Board and Fund Defendants." The plaintiffs call them the "D&O Defendants." For the sake of brevity, this decision adopts the shorter version. The other defendant in the case is J.P. Morgan Securities LLC.

[2] Dkt. 385, Exh. 1 at ¶ 10 (the "Dispute Resolution Clause").

[3] Dkt. 385, Exh. 10.

[4] Dkt. 408, Exh. 5.

1

intention of the parties to have a mechanism for alternative dispute resolution in the event that a disagreement arose (including the type of dispute that is the subject of the present motion). …

Regarding dispute resolution, given my inability to serve, I would think that a logical alternative—and one I believe I may be able to compel—is to direct the parties to agree to an alternate neutral and if an agreement can't be reached, to appoint one. I'd like your views on this as soon as possible.[5]

The D&O Defendants declined Meyer's offer to appoint a successor neutral. They asserted that they "did not agree to a generic alternative dispute provision," nor to "any procedure that would authorize an alternative neutral."[6] They instead pressed the court to resolve the dispute over the term sheet.

The plaintiffs countered with a motion to dismiss the D&O Defendants' application for lack of jurisdiction. According to the plaintiffs, this court lacks jurisdiction to resolve disputes over the term sheet because of the Dispute Resolution Clause. They believe the Dispute Resolution Clause is a broad arbitration clause that requires the parties to arbitrate "[a]ny disputes arising out of this Term Sheet." The D&O Defendants, by contrast, assert that they only agreed to have Meyer serve as a mediator, not as an arbitrator.

An arbitration clause is a specialized type of forum selection clause.[7] When interpreting such a clause, courts "apply ordinary state-law principles that govern the

---

[5] Dkt. 385, Exh. 2 at 1-2

[6] Dkt. 385, Exh. 3 at 4.

[7] *Nat'l Indus. Gp. (Hdlg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013).

2

formation of contracts."[8] Because "the public policy of Delaware favors arbitration," the ordinary principles or contract interpretation are supplemented by the rule that "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration."[9]

In my view, the Dispute Resolution Clause constitutes an agreement to arbitrate. Delaware courts "do not require the magic word, 'arbitration,' to find that parties intended to arbitrate."[10] A clause is sufficient if it provides for "a final and binding remedy by a neutral third party."[11] When interpreting a clause, Delaware's ordinary principles of contract interpretation require that a court enforce the plain language of its terms.[12]

The plain language of the Dispute Resolution Clause empowers Meyer "to resolve" any disputes "arising out of this Term Sheet." It further speaks in terms of Meyer having "sole authority and exclusive jurisdiction." This language makes clear that the parties intended to divest the court of jurisdiction over disputes arising out of the term sheet and vest that authority exclusively in an alternative decision maker. Read in the context of the Dispute Resolution Clause, the plain meaning of the term "resolve" contemplates a binding

---

[8] *First Options Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[9] *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998).

[10] *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 397 (Del. 2010).

[11] *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693-94 (6th Cir. 2012). *See generally Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *11 n.78 (Del. Ch. Aug. 9, 2012) (Strine, C.) (collecting cases, including *Evanston*), *aff'd*, 72 A.3d 78 (Del. 2013).

[12] *See Norton v. Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

decision. Dictionaries define the verb "resolve" as to "to reach a decision about,"[13] "to deal with successfully," "clear up," and "to find an answer to."[14] The Dispute Resolution Clause recognized that Meyer would "resolve" any disputes arising out of the term sheet, that he would have the "sole authority" to do so, and that his jurisdiction would be "exclusive." Given its plain language, the Dispute Resolution Clause constitutes an agreement to arbitrate any disputes arising under the term sheet.

The D&O Defendants contend that such an interpretation would be nonsensical because this case is a class action and any settlement requires court approval under Court of Chancery Rule 23(e). It is true that the terms of the settlement, once finalized, must be approved by this court before the settlement can become effective and be implemented. That is a different issue than disputes over the terms of the settlement and their implementation in the final settlement documents. The Dispute Resolution Clause governs disputes over the term sheet and its implementation in final settlement documents. Once the final settlement documentation is complete, it will be submitted to the court for approval.

The D&O Defendants also contend that any agreement to arbitrate has failed because Meyer recused himself. They rely on a series of federal decisions which have held that if the parties to an arbitration agreement have selected a specific individual whose

---

[13] *The American Heritage College Dictionary* (3d ed. 1993); *accord Webster's Third New International Dictionary* (1976).

[14] *Webster's Ninth New Collegiate Dictionary* (1990).

4

identity as the arbitrator is integral to the parties' agreement to arbitrate, and if the individual cannot serve, then the agreement to arbitrate no longer holds for failure of an essential condition.[15]

In my view, the fact that Meyer has recused himself from deciding the merits of the disputes under the term sheet does not clear the way for this court to resolve those disputes itself. The question of whether an arbitrator who has recused himself may select a successor arbitrator has been described as a question of procedural arbitrability.[16] "Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions that grow out of the dispute and bear on its final disposition should be left to the arbitrator."[17]

Meyer should decide in the first instance the question of procedural arbitrability raised by his recusal. Meyer has indicated that he believes he can address this issue, and

---

[15] *See, e.g., In re Salomon Inc. S'holders' Deriv. Litig.* 68 F.3d 554, 560 (2d Cir. 1995). *See generally* Daniel A. Sito, Comment, *"Integral" Decisionmaking: Judicial Interpretation of Predispute Arbitration Agreements Naming the National Arbitration Forum*, 81 U. Chi. L. Rev. 1991, 2000-02 (2014); Nicole Wanlass, Note, *No Longer Available: Critiquing the Contradictory Ways Courts Treat Exclusive Arbitration Forum Clauses When the Forum Can No Longer Arbitrate*, 99 Minn. L. Rev. 2005, 2013-17 (2015).

[16] *See Spirit Airlines, Inc. v. Ass'n of Flight Attendants-CWA, AFL-CIO*, 2014 WL 4678235, at *8 n.4 (E.D. Mich. Sept. 18, 2014) ("Procedural issues include . . . whether an arbitration panel member who recused himself may name his replacement."); *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 860 (8th Cir. 2014) ("Generally, a disqualified arbitrator may name a replacement if the rules allow it.").

[17] *Viacom Int'l*, 72 A.3d at 83 (internal quotation marks omitted) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)).

there is good reason to believe it falls within his purview. The parties retained Meyer through JAMS and agreed to proceed under the rules of that organization.[18] Consequently, their agreement that Meyer would have "the sole authority and exclusive jurisdiction to resolve" any disputes arising out of the term sheet logically incorporated the JAMS dispute resolution rules. JAMS Rule 1 states:

> (a) The JAMS Comprehensive Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, any disputed claim or counterclaim that exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.

> (b) The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.[19]

JAMS Rule 15(g) provides that, "If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule."[20]

Assuming, for the sake of argument, that Meyer cannot appoint a successor, that still would not mean that this court would resolve the underlying dispute. Instead, under

---

[18] *See* Dkt. 406, Exh. 6 (email from JAMS confirming that the parties chose "JAMS as your dispute resolution provider"); *Id.* at Exh. 7 (email from Meyer confirming "that my services are being provided through JAMS" and attaching a letter agreement again confirming that "I will be providing my services through JAMS").

[19] *Id.* at Exh. 8.

[20] *Id.*

the Federal Arbitration Act (the "FAA"), this court's role would be limited to appointing a successor arbitrator.

When agreeing to the Dispute Resolution Clause, the parties to the term sheet did not comply with the statutory standard necessary for invoking the Delaware Uniform Arbitration Act.[21] Consequently any application to enforce the Dispute Resolution Clause "shall be decided by the Court of Chancery in conformity with the Federal Arbitration Act, and such general principles of law and equity as are not inconsistent with that Act."[22]

Section 5 of the FAA states, in mandatory terms, that if an arbitration provision fails for lack of an arbitrator, then upon an application by a party to the agreement "the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein."[23] As noted, the D&O Defendants have relied on federal cases which examine the degree to which a particular arbitral forum or individual arbitrator is "an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'"[24] These cases hold that if the selection was integral, "the failure of the chosen forum preclude[s] arbitration."[25]

---

[21] *See* 10 *Del. C.* § 5702(a).

[22] 10 *Del. C.* § 5702(c).

[23] 9 U.S.C. § 5.

[24] *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).

[25] *Id.*

In the *Cash Advance* decision, the United States Court of Appeals for the Seventh Circuit thoroughly analyzed the cases that have applied the "integral-or-ancillary" test and called this approach into question.[26] The *Cash Advance* court explained that "[w]hen a court declares that one or another part of an arbitration clause is 'integral' and that the clause is therefore unenforceable as a matter of federal common law, it is effectively disagreeing with Congress, which provided that a judge can appoint an arbitrator when for 'any' reason something has gone wrong."[27] The court held that, under those circumstances, Section 5 empowers a court to name a substitute arbitrator.

In my view, the analysis in the *Cash Advance* decision is persuasive. As in *Cash Advance*, one thing about this case is clear: "These parties selected private dispute resolution."[28] Given that selection, this court's role would not be to resolve the dispute, but rather to "supply details in order to make arbitration work."[29]

This court lacks jurisdiction to consider the dispute over the term sheet that the D&O Defendants have tried to bring before this court. The plaintiffs' motion to dismiss any attempt to enforce the term sheet before this court is GRANTED. For that reason, the D&O Defendants' motion to enforce is DENIED WITHOUT PREJUDICE.

---

[26] *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787 (7th Cir. 2013).

[27] *Id.* at 791.

[28] *Id.*

[29] *Id.*